IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN WOODS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 00-AR-2451-S |
| THE CITY OF ALABASTER, | ) |
| Defendant. | ) |

ENTERED
OCT 1 8 2001

### MEMORANDUM OPINION

Before the court are the motions of defendant, the City of Alabaster ("Alabaster"), for summary judgment, to strike the affidavit of plaintiff, John Woods ("Woods") and for an award of attorney's fees incurred by Alabaster as a result of the filing of the Woods affidavit. Woods is a terminated probationary employee of Alabaster. He makes various claims, invoking the jurisdiction of this court based on his Title VII claim of sexual harassment. For reasons set out in this memorandum opinion, this court will, by separate order, grant Alabaster's motion for summary judgment, grant its motion to strike, but decline to award it attorney's fees.

In the affidavit at issue, Woods testifies, *inter alia*, that his supervisor and alleged harasser, Marie Jordan ("Jordan"), partially exposed herself to him and asked him to fix her pool so that they might "get naked...and have a good time." The parties



agree that Woods never mentioned these alleged incidents in his previously taken deposition. The parties disagree, though, as to why Woods never mentioned them. Woods maintains that he did not recount these events because he "was never asked about these on my deposition, only being asked when I complained." Woods aff. at 1. Alabaster counters with its contention that the stories do not appear in the deposition because Woods did not fabricate the stories until his deposition fell far short of describing actionable conduct by Jordan.

As noted, Woods says that he left out the stories because he was not asked about them. Woods says that he was only asked to describe incidents of harassment "when I complained." Woods Aff. at 1. Presumably, Woods now claims that the deposition questions were limited to an inventory of the incidents that caused him to complain to a supervisor. A fair reading of the transcript shows how ridiculous this claim is. Woods was asked "[a]ny other events of which you complain?" He eventually responded, "[w]e've covered them all." Woods depo. at 192. He was again asked "[n]othing else?", and responded "[a]s far as the sexual part, no sir." Id. Then Woods was asked, "any other complaints that you have, period?" Id. To this question Woods responded with a few problems he had had with Jordan, but not with any of the stories in the affidavit. The inquisitor clearly used the present tense of the verb *complain* to indicate events that are the subject of the instant action, not events that led Woods to complain to a

supervisor.

There is only one plausible reading of the word "complain." This reading is obvious to everyone, except apparently Woods, so that, for his benefit, this court will define the word. "Complain" in the context of the deposition could only mean "*subject to the complaint filed in this action.*" Woods's explanation that to him "complain" meant "*complain to his supervisor*" is incredible. No reasonable jury could agree with his tortured interpretation. As a matter of law, when Alabaster asked Woods to list all incidents of sexual harassment and Woods did not reveal the events detailed in his affidavit, Woods waived his right to use them as evidence at trial or in opposition to summary judgment. It is not necessary for this court to determine that the affidavit was presented in bad faith in order to grant Alabaster's motion to strike, although the court is tempted to make such a finding.

Alabaster has also moved this court for an award of attorney's fees under Rule 56(g), F. R. Civ. P. If this court had determined that the affidavit was presented in bad faith, whether to award fees would not be within the discretion of the court. It would be automatic. Whether to find Woods, or his attorney, in contempt, would be within this court's discretion even if bad faith had been found. Alabaster has not suggested a contempt citation, and none will issue.

**Undisputed Facts**

Woods worked for Alabaster as its Parks and Recreation Supervisor from October 4, 1999 through his termination on February 24, 2000. On one occasion, Jordan, while reprimanding Woods, at the "C" field, touched Woods's arm. On another occasion, Jordan hit Woods on his rear end with a yard stick and called him a "bad boy." On February 23, the day before his termination, Woods arranged a meeting with city officials to discuss his sexual harassment complaint. On February 24, at 11:00 a.m., Jordan terminated Woods. At 1:00 p.m., Woods, Jordan, Mayor Rauch and the city administrator, Jimmy Gould, attended the scheduled meeting.

**Discussion**

In his brief opposing Alabaster's motion for summary judgment, Woods concedes the correctness of Alabaster's arguments for dismissing his claims of assault and battery, outrage, and invasion of privacy. Furthermore, Woods "concedes that Title VII Does Not Allow for Punitive Damages against a Municipal Corporation in Alabama." (capitals in original) (Pl. Brief in Opp. to Mot. for Summ. J. at 29). This court readily agrees with these concessions and will dismiss these claims. Remaining, then, are Woods's claims of negligent supervision, sexual harassment, and retaliatory discharge.

Under Alabama law, a plaintiff bringing an action under any non-federal cause of action against a municipality must, within

six months of the events giving rise to the claim, file with the clerk of the municipality a sworn statement stating the manner, time and place of injury. Ala. Code §§ 11-47-192 and 11-47-23 (1975). While the complaint in an action at law will usually satisfy this requirement, the complaint in this action was filed more than six months after Woods's termination, so it cannot serve as notice that would satisfy the Alabama prerequisite. On or about March 8, 2000, well within six months of Woods's termination, Woods filed a sworn E.E.O.C. charge that was delivered to Alabaster. Alabaster, through its attorney, acknowledged and responded to the charge on April 25, 2000. The charge was sworn, notarized, and delivered to Alabaster. The charge lists Woods's sexual harassment and retaliatory discharge claims, but fails to mention negligent supervision. Because Woods did not comply with the statutory requirements of §§ 11-47-23 and 11-47-192 regarding his state law claim for negligent supervision, the claim is due to be dismissed.

Woods is left with his sexual harassment and retaliatory discharge claims. He cites three incidents that he says constitute sexual harassment. They are the "C" field incident, Jordan striking him on the behind with a yard stick, and an occasion, the occurrence of which Jordan denies, when Jordan hugged him. When deciding whether to grant a defendant's summary judgment motion, the court is required to view all evidence in a light most favorable to plaintiff, and will do so here.

The first incident of claimed harassment occurred when Jordan "was complimenting [Woods] on a job that I had done,...and come up and hugged me, you know, kind of from behind with her breasts into my back and all." Woods depo. at 172-73. After this hug, Woods asked Jordan to keep her hands off of him, she agreed and apologized. The second incident occurred when Jordan scolded him at the "C" field. Woods does not recall why Jordan reprimanded him. She grabbed his arm, shook it violently, and caused it to hit her breasts. The reason his arm hit her breasts was "because she was violently shaking [Woods's] arm." Woods's depo. at 184. Woods argues that the reason she treated him in this manner was to "show[] me out that she was the boss over me in front of them men by grabbing my arm and pulling me up to her like she was just chastising a kid." Woods's depo. at 185. The last incident of which Woods complained during his deposition occurred in early February. Woods stopped by Jordan's office to retrieve work orders for the day's assignments. As Woods left, Jordan, yardstick in hand "[w]alked right up there and just popped [Woods] right on the ass with it." Woods depo. at 189. He gave her "a look like I could run through her" and she, realizing Woods was offended, apologized. Woods depo. at 189.

When determining if conduct is severe enough to sustain a Title VII hostile work environment claim, this court considers four factors: (1) the frequency of the conduct; (2) the severity of the conduct, (3) whether the conduct is physically threatening

or humiliating as opposed to merely offensive, and (4)"whether the conduct unreasonably interferes with the employee's job performance." *Gupta v. Florida Board of Regents,* 212 F. 3d 571 at 584. (11th Cir. 2000). As in most cases, whether Woods's claim stands or falls depends upon the last factor. The conduct must unreasonably interfere with the plaintiff's job performance, evaluated from both a subjective and an objective standard. *Gupta* at 586.

   Viewed in its totality, Jordan's conduct, including the conduct described in the stricken affidavit considered only for the purpose of argument, simply is not severe enough to be actionable under Title VII. Though Woods may have been shamed by being corrected in front of his subordinates on the "C" field, there is no proof that the reason for scolding him, nor the manner in which he was scolded, was because of his sex. Woods own description of the hug shows that it was for praise, not because of his sex. Woods depo. at 172. In his deposition, Woods does not say anything that would prove, or disprove, that the swat with the yardstick was sexually charged. Even if there was a sexual aspect to the swat, it certainly does not rise to the level required to sustain a Title VII action. Being approached for a romp, if it occurred, is not pervasively hostile conduct creating an intolerable work environment. This court will grant the Rule 56 motion as to Woods's claim for sexual harassment.

The court now turns its attention to the retaliation claim. As long as a plaintiff has a good faith belief that he was discriminated against, he can maintain a retaliation claim even after the failure of the underlying sexual harassment claim. *Gupta* at 586. This court finds that though his Title VII claim is legally insufficient, Woods had a good faith basis for bringing a charge of sexual harassment. In order to sustain a retaliation claim, a plaintiff must show that he suffered an adverse action because he engaged in a protected activity. Woods has shown he engaged in a protected activity and suffered an adverse action, to-wit, he was fired. The element disputed by defendant is causation.

Woods must first establish a *prima facie* case of retaliation. He has done this by showing close temporal proximity. *See Gupta* at 590. The burden thus shifts to Alabaster to proffer a non-retaliatory reason for the discharge. In order to win on summary judgment, Alabaster must not simply offer a legitimate reason, or reasons, but must show that there is no issue of triable fact as to the legitimacy of its proffered reason or reasons. There are as many as seven reasons Alabaster has given as to why it fired Woods. The first and foremost is that Woods's displeasure over his salary rendered him uncommunicative at times and also inspired him to frequently threaten to quit. Woods has offered no evidence to dispute the existence of either his threats or his reticence. Because no

reasonable jury could find that firing a probationary employee who frequently threatened to quit and did not communicate well is pretextual, Alabaster has met its burden for summary judgment on Woods's retaliation claim.  Having found that Alabaster satisfied its burden with this reason, it is not necessary to evaluate the legitimacy of the other offered reasons.

For the reasons above outlined, Alabaster's motion to strike Woods's affidavit will be granted.  Also, Alabaster is entitled to summary judgment on all claims in this action.

DONE this __18__ day of October, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE